U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 2018 NOV 16 P 5: 06 |
| | ) |
| v. | ) **Criminal No. 2:18-cr-00062-JDL** |
| | ) BY CLERK |
| **ABDIRASHID AHMED** | ) **VIOLATIONS:** |
| **GARAT OSMAN and** | ) **Title 18 U.S.C. §§371, 1035, 1347,1349, 1516, 2** |
| **NANCY LUDWIG** | ) **and 42 U.S.C. §§ 1320a-7b** |
| | ) |

**SUPERSEDING INDICTMENT**

The Grand Jury charges:

**INTRODUCTION**

1.      Unless otherwise stated, at all times relevant to this indictment:

Medicaid / MaineCare

a.      Medicaid was a health care benefit program jointly funded with federal and state funds. Medicaid paid for health care benefit services for low-income individuals. It was administered by the U.S. Department of Health and Human Services (hereinafter, U.S. HHS) and by state agencies. In Maine, Medicaid was part of MaineCare and was administered by the Maine Department of Health and Human Services (hereinafter, MDHHS). MaineCare annually received in excess of $100,000 from the United States.

b.      MaineCare was a health care fraud benefit program as that term was defined in Title 18, United States Code, Section 24.

c.      Individuals who qualified for MaineCare were commonly referred to as "beneficiaries." Each beneficiary was given a MaineCare identification number.

d.      Healthcare providers that provided services to MaineCare beneficiaries were referred to as MaineCare "providers." To participate in MaineCare, providers were required to

submit an application in which the provider agrees to comply with all MaineCare related laws and regulations. If MaineCare approved the application, the provider was assigned a MaineCare "provider number." A healthcare provider with a MaineCare provider number could file claims with MaineCare to obtain reimbursement for services rendered to MaineCare beneficiaries.

 e. MaineCare would reimburse providers for interpreter services when interpretation services were necessary and reasonable for a provider to communicate effectively with members regarding health needs. Interpreter services were only covered in conjunction with another MaineCare covered service.

 f. MaineCare regulations stated that interpreter services were to be billed using a specific code, per 15 minute intervals. MaineCare's reimbursement rate per 15 minute interval of interpreter services was twenty dollars ($20).

 g. Community Intergration Services (CIS) were allowable services under MaineCare. To be eligible for CIS, a beneficiary had to have a qualifying diagnosis and receive pre-authorization for CIS.

 h. Starting in April 2016, MaineCare adopted a change in the qualifying diagnosis criteria for a beneficiary to receive CIS.

 i. MaineCare regulations further stated that the provider must include in the member's record documentation that recorded the date and time of the interpreter service, duration, language used, and name of the interpreter.

 j. Individual A was a MaineCare approved provider of healthcare services with a MaineCare provider number. Healthcare services provided by individual A were to be billed in time intervals of 15 minutes.

-2-

k.      Individual B was a MaineCare approved provider of healthcare services with a MaineCare provider number. Healthcare services provided by individual B were to be billed in time intervals of 15 minutes.

l.      Facing Change, P.A. (hereinafter "Facing Change") was a MaineCare provider that was a counseling agency that provided mental health counseling, substance abuse counseling, and CIS.

### The Defendants

m.      Abdirashid Ahmed, a resident of Lewiston, Maine, performed interpreter services at Facing Change through numerous companies, including On Time Interpretation, LLC, Global Interpreting Services of Maine, LLC, and Gold Star Interpreting LLC. Ahmed was a partner in Global Interpreter Services of Maine, LLC which was formed in approximately September 2015.

n.      Garat Osman, a resident of Auburn, Maine, performed some interpreter services for MaineCare beneficiaries. Osman was an owner of Gold Star Interpreting, LLC which was formed in approximately December 2016.

o.      Nancy Ludwig, a resident of Winthrop, Maine was the owner of Facing Change where she provided counseling services.

## COUNT ONE
## Health Care Fraud, 18 U.S.C. § 1347

2.      Paragraph 1 of this Superseding Indictment is incorporated by reference as if fully set forth herein.

3.      From approximately August 2014 through and until at least May 2018, in the District of Maine the defendant,

## ABDIRASHID AHMED

-3-

did knowingly and willfully execute a scheme to defraud MaineCare, a health care benefit

program, and to obtain by means of false and fraudulent pretenses, representations, and

promises, money or property owned by MaineCare, a health care benefit program as defined in

Title 18, United States Code, Section 24(b), in connection with the delivery of and payment for

health care benefits, items and services, by causing to be submitted fraudulent claims for

interpreter services.

### The Scheme to Defraud

4. It was part of the scheme and artifice that defendant ABDIRASHID AHMED conspired with

   several MaineCare providers to bill MaineCare for health care and interpreter services that

   were not provided.

5. It was part of the scheme and artifice that defendant ABDIRASHID AHMED brought

   MaineCare beneficiaries to various health care providers purportedly for health care for

   which he or other persons at his direction provided interpreter services.

6. It was further part of the scheme and artifice that defendant ABDIRASHID AHMED caused

   other persons to submit billings to MaineCare that were false and fraudulent in that the

   billings for interpreter services were for services not rendered  or not rendered for the units

   billed.

7. It was further part of the scheme and artifice to defraud that defendant AHMED

   ABDIRASHID did record, and cause others to record, false, fraudulent, and misleading

   documents and statements in patients' charts to support the overbilling of services.

### MANNER AND MEANS OF THE SCHEME TO DEFRAUD

8. To execute the above referenced scheme and artifice, the defendant  ABDIRASHID

   AHMED, used the following manner and means, among others.

9. At various times during the scheme, defendant ABDIRASHID AHMED would refer
   MaineCare beneficiaries to various MaineCare providers.

10. Defendant ABDIRASHID AHMED then would provide, or purport to provide, interpretation
    services for the medical visits for the beneficiaries he referred.

11. Defendant ABDIRASHID AHMED then would sign a document which would overstate the
    number of units of service he actually provided. In addition, defendant ABDIRASHID
    AHMED signed documents indicating he was the interpreter for a session when he was in
    fact not the interpreter, or when no interpreter services were provided. Defendant
    ABDIRASHID AHMED would then provide these documents to the providers so the
    documents would become part of the patient's file.

12. The MaineCare provider would bill MaineCare for health care services and interpreter
    services for the units specified on the document ABDIRASHID AHMED signed which was
    in excess of the service that was actually provided. MaineCare then would reimburse the
    provider based upon the false and fraudulent billings. The MaineCare provider would then
    pay defendant ABDIRASHID AHMED or other entities working with him the monies that
    had been paid by MaineCare for interpreter services.

    In violation of Title 18, United States Code, Sections 1347 and 24(b).

## COUNT TWO
### Conspiracy to Commit Health Care Fraud
### 18 U.S.C. § 1349

13. Paragraphs 1 and 5 through 7 of this Superseding Indictment are incorporated by reference
    as if fully set forth herein.

14. From at least about August 2014 through and until at least about April 2015, in the District
    of Maine, the defendant,

-5-

## ABDIRASHID AHMED

conspired with Provider B to willfully execute, and attempt to execute a scheme or artifice (1) to defraud MaineCare; and (2) to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, or under custody and control of MaineCare in connection with the delivery of or payments for healthcare benefits, items and services, in violation of Title 18, United States Code, Section 1347.

## PURPOSE OF THE CONSPIRACY

15.     The purpose of the conspiracy was for the defendant and the co-conspirator to unlawfully enrich themselves by, among other things:

>    a. billing MaineCare, and receiving reimbursement from MaineCare, for healthcare services and interpreter services which services were provided for less duration than billed;

>    b. creating false documentation in patient files to conceal their fraudulent conduct.

## MANNER AND MEANS

16.     It was part of the conspiracy that members of the conspiracy would generate documentation that would make it look like the health treatment and interpretation services lasted a certain duration when in fact the visit had not occurred or lasted a shorter duration.

17.     It was a further part of the conspiracy that Individual B would then submit claims for healthcare services and interpreter services to MaineCare with the false information reflected in the records. MaineCare would then reimburse Individual B based upon those false and fraudulent claims.

-6-

18.     After MaineCare reimbursed Individual B based on the false and fraudulent claims

submitted for interpreter services, Individual B would pay these monies to ABDIRASHID

AHMED or a business entity owned and controlled by him.

        All in violation of Title 18, United States Code, Sections 1349 and 1347.

## COUNT THREE
### Conspiracy to Commit Health Care Fraud
### 18 U.S.C. § 1349

19.     Paragraph 1 of this Superseding Indictment is incorporated by reference as if fully set

forth herein.

20.     From at least about February 2015 through and until at least December 2017, in the

District of Maine, the defendants,

## ABDIRASHID AHMED
### and
## GARAT OSMAN

conspired and agreed together, and with others known and unknown to the Grand Jury, to

willfully execute, and attempt to execute a scheme or artifice (1) to defraud MaineCare; and

(2) to obtain, by means of false and fraudulent pretenses, representations, and promises, money

and property owned by, or under custody and control of MaineCare in connection with the

delivery of or payments for healthcare benefits, items and services, in violation of Title 18,

United States Code, Section 1347.

## PURPOSE OF THE CONSPIRACY

21.     The purpose of the conspiracy was for the defendants and co-conspirators to unlawfully

enrich themselves by, among other things:

        a.  offering, paying, soliciting, and receiving kickbacks in return for referring

            MaineCare beneficiaries to Individual A;

-7-

b.  billing MaineCare, and receiving reimbursement from MaineCare, for healthcare

services and interpreter services which were either not provided or were provided

for less duration than billed;

### MANNER AND MEANS

22.  It was part of this conspiracy that defendant ABDIRASHID AHMED agreed to refer

MaineCare beneficiaries to Individual A in return for Individual A paying remuneration to

ABDIRASHID AHMED and other conspirators for each person referred.

23.  It was part of the conspiracy that after ABDIRASHID AHMED and Individual A made

this agreement, ABDIRASHID AHMED and GARAT OSMAN brought MaineCare

beneficiaries to Individual A purportedly for treatment and ABDIRASHID AHMED, GARAT

OSMAN, and other persons would serve as interpreters during these visits.

24.  It was further part of the conspiracy that members of the conspiracy would generate

documentation that was maintained in a patient's file and that would make it look like the health

treatment and interpretation services lasted a certain duration when in fact the visit had not

occurred or lasted a much shorter duration.

25.  It was a further part of the conspiracy that Individual A would then submit claims for

healthcare services and interpreter services to MaineCare with the false information reflected in

the records.  MaineCare would then reimburse Individual A based upon those false and

fraudulent claims.

26.  After MaineCare reimbursed Individual A based on the false and fraudulent claims

submitted for interpreter services, Individual A would pay these monies to ABDIRASHID

AHMED, GARAT OSMAN, or business entities owned and controlled by them.

All in violation of Title 18, United States Code, Sections 1349 and 1347.

## COUNT FOUR
## Conspiracy to Commit Health Care Fraud
## 18 U.S.C. § 1349

27. Paragraph 1 of this Superseding Indictment is incorporated by reference as if fully set forth herein.

28. From at least about February 2015 through and until about at least May 1, 2018, in the District of Maine, the defendants,

## ABDIRASHID AHMED
## GARAT OSMAN
## NANCY LUDWIG

conspired and agreed together, and with others known and unknown to the Grand Jury, to willfully execute, and attempt to execute a scheme or artifice (1) to defraud MaineCare; and (2) to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, or under custody and control of MaineCare in connection with the delivery of or payments for healthcare benefits, items and services, in violation of Title 18, United States Code, Section 1347.

## PURPOSE OF THE CONSPIRACY

29. The purpose of the conspiracy was for the defendants and co-conspirators to unlawfully enrich themselves by, among other things:

- a. offering, paying, soliciting, and receiving kickbacks in return for referring MaineCare beneficiaries to Facing Change;
- b. billing MaineCare, and receiving reimbursement from MaineCare, for healthcare services and interpreter services which services were either not provided or were provided for less duration than billed;

-9-

## MANNER AND MEANS

30.     It was part of this conspiracy that in approximately February 2015 defendant ABDIRASHID AHMED solicited remuneration from defendant Nancy Ludwig in return for defendant ABDIRASHID AHMED referring MaineCare beneficiaries to Facing Change.

31.     It was part of the conspiracy that after this agreement was made, Facing Change paid 10% of ABDIRASHID AHMED's weekly interpreter billings to defendant ABDIRASHID AHMED, directly and indirectly, for patients he referred to Facing Change

32.     It was further part of the conspiracy the defendants ABDIRASHID AHMED and GARAT OSMAN would bring MaineCare beneficiaries to Facing Change purportedly for treatment and ABDIRASHID AHMED, GARAT OSMAN, and other persons would serve as interpreters during these visits.

33.     It was further part of the conspiracy that members of the conspiracy would generate documentation that was kept in a patient's file that would make it look like the health treatment and interpretation services lasted a certain duration when in fact the visit had not occurred or lasted a shorter duration.

34.     It was a further part of the conspiracy that Facing Change would then submit claims for healthcare services and interpreter services to MaineCare with the false information reflected in the records.  MaineCare would then reimburse Facing Change based upon those false and fraudulent claims.

35.     After MaineCare reimbursed Facing Change based on the false and fraudulent claims submitted for interpreter services, Facing Change would pay these monies to ABDIRASHID AHMED, GARAT OSMAN or business entities owned and controlled by them or co-conspirators.

-10-

36.     It was further part of this conspiracy that a co-conspirator altered, or caused another

person to alter, invoices for interpreter services that Facing Change provided, or caused to be

provided to MaineCare. The interpreter invoices were altered to remove the 10% remuneration

that Facing Change was paying defendant ABDIRASHID AHMED.

37.     It was further part of this conspiracy that after MaineCare changed the eligibility

requirements for CIS in 2016, Nancy Ludwig diagnosed patients that ABDIRAHID AHMED

had referred with a new diagnosis so that those patients would remain eligible for CIS.

38.     It was further part of the conspiracy that defendant Nancy Ludwig and other conspirators

created and caused other persons to create false and misleading entries in patients' files.

        All in violation of Title 18, United States Code, Sections 1349 and 1347.

## COUNT FIVE
### 18 U.S.C. § 371 - Conspiracy to Receive and Pay Health Care Kickbacks

39.     From about May 2015, and continuing thereafter up to approximately December 2017, in

        the District of Maine,

### ABDIRASHID AHMED
### and
### GARAT OSMAN

conspired and agreed together, and with others known and unknown to the Grand Jury, to

commit certain offense against the United States, that is to violate Title 42, United States Code,

Section 1320a-7b, by knowingly and willfully soliciting and receiving remunerations,

specifically money, directly and indirectly, in return for referring individuals for the furnishing

and arranging the furnishing of services for which payment may be made by a Federal health

care program, that is, MaineCare.

-11-

## Purpose of the Conspiracy

40.     It was a purpose of the conspiracy for Defendants ABDIRASHID AHMED and GARAT

OSMAN and their co-conspirators to unlawfully enrich themselves by paying and receiving

kickbacks in exchange for the referral of MaineCare beneficiaries for whom Individual A would

submit claims to MaineCare.

## Manner and Means

40. The manner and means by which the conspiracy was sought to be accomplished included,

among others, the following:

41. Paragraphs 1 and 22 through 26 of this Superseding Indictment are realleged and

incorporated by reference as if fully set forth herein.

## Overt Acts

42.     In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts

were committed in the District of Maine:

> a.  On about August 17, 2015, Abdirashid Ahmed received a payment of $4,700
>
>     from Individual A in exchange in part for Abdirashid Ahmed sending MaineCare
>
>     beneficiaries to Individual A for services.
>
> b.  On about November 2, 2015, Individual A paid Global Interpreter Services of
>
>     Maine a payment of $6200 in exchange in part for Abdirashid Ahmed sending
>
>     MaineCare beneficiaries to Individual A for services.
>
> c.  On about July 22, 2016, Abdirashid Ahmed received the payment of $6,200 from
>
>     Individual A in exchange in part for Abdirashid Ahmed sending MaineCare
>
>     beneficiaries to Individual A for services.

d.  On about January 11, 2017 Abdirashid Ahmed received the payment of $6,600 from Individual A in exchange in part for Abdirashid Ahmed sending MaineCare beneficiaries to Individual A for services.

e.  On about January 25, 2017, Individual A paid Gold Star Interpreting Services of Maine Services a payment of $6200 in exchange in part for Abdirashid Ahmed sending MaineCare beneficiaries to Individual A for services.

f.  On December 18, 2017, Individual A paid Gold Star Interpreting Service a payment of $720 in exchange in part for Abdirashid Ahmed sending MaineCare beneficiaries to Individual A for services.

All in violation of Title 18, United States Code, Section 371.

## COUNT SIX
### 18 U.S.C. § 371 - Conspiracy to Receive and Pay Health Care Kickbacks

43.  From about February 2015, and continuing thereafter up to approximately May 2016, in the District of Maine,

### ABDIRASHID AHMED
### and
### NANCY LUDWIG

conspired and agreed together, and with others known and unknown to the Grand Jury, to commit certain offense against the United States, that is to violate Title 42, United States Code, Section 1320a-7b, by knowingly and willfully soliciting and receiving remunerations, specifically money, directly and indirectly, in return for referring individuals for the furnishing and arranging the furnishing of services for which payment may be made by a Federal health care program, that is, MaineCare.

### Purpose of the Conspiracy

44.     It was a purpose of the conspiracy for Defendants ABDIRASHID AHMED, NANCY

LUDWIG, and their co-conspirators to unlawfully enrich themselves by paying and receiving

kickbacks in exchange for the referral of MaineCare beneficiaries for whom Facing Change

would submit claims to MaineCare.

## Manner and Means

45.     The manner and means by which the conspiracy was sought to be accomplished included,

among others, the following:

    Paragraphs 1 and 30 through 38 of this Superseding Indictment are realleged and

incorporated by reference as if fully set forth herein.

## Overt Acts

46.     In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts

were committed in the District of Maine:

a) On about February 27, 2015, ABDIRASHID AHMED received a payment of $1892 from
   Facing Change which payment in part was in exchange for ABDIRASHID AHMED
   sending MaineCare beneficiaries to Facing Change for services.

b) On about April 24, 2015, ABDIRASHID AHMED received a payment of $2090 from
   Facing Change which payment in part was in exchange for ABDIRASHID AHMED
   sending MaineCare beneficiaries to Facing Change for services.

c) On about February 25, 2016, ABDIRASHID AHMED received a payment of $4742 from
   Facing Change which payment in part was in exchange for ABDIRASHID AHMED
   sending MaineCare beneficiaries to Facing Change for services.

All in violation of Title 18, United States Code, Section 371.

### COUNTS SEVEN-TWENTY
### 42 U.S.C. § 1320a-7b
### Receiving Health Care Kickbacks

47.     Paragraph 1 of this Superseding Indictment is realleged and incorporated by

reference as if set forth herein.

48.     On about the dates enumerated below, in the District of Maine, the defendant

enumerated below did knowingly and willfully receive monetary remuneration, directly and

indirectly, in return for referring individuals for the furnishing and arranging the furnishing of

services for which payment may be made in whole or in part by MaineCare:

| COUNT | DEFENDANT | ON OR ABOUT DATE |
|---|---|---|
| 7 | **ABDIRASHID AHMED** | August 17, 2015 |
| 8 | **ABDIRASHID AHMED** | February 27, 2015 |
| 9 | **ABDIRASHID AHMED** | April 24, 2015 |
| 10 | **ABDIRASHID AHMED** | November 2, 2015 |
| 11 | **ABDIRASHID AHMED** | December 31, 2015 |
| 12 | **ABDIRASHID AHMED** | January 29, 2016 |
| 13 | **ABDIRASHID AHMED** | February 5, 2016 |
| 14 | **ABDIRASHID AHMED** | February 12, 2016 |
| 15 | **ABDIRASHID AHMED** | March 1, 2016 |
| 16 | **ABDIRASHID AHMED** | May 6, 2016 |
| 17 | **ABDIRASHID AHMED** | July 22, 2016 |
| 18 | **ABDIRASHID AHMED** | January 4, 2017 |
| 19 | **GARAT OSMAN** | January 25, 2017 |
| 20 | **GARAT OSMAN** | December 18, 2017 |

All in violation of Title 42, United States Code Section 1320a-7b (b)(1).

### COUNTS TWENTY ONE-TWENTY FIVE
### 42 U.S.C. § 1320a-7b
### Offering/Paying Health Care Kickbacks

49. On about the dates enumerated below, in the District of Maine, the defendant,

### NANCY LUDWIG

did knowingly and willfully offer to pay and pay monetary remuneration to ABDIRASHID

AHMED, to induce him to refer MaineCare beneficiaries to Facing Change for the furnishing of

counseling and CIS, for which payment may be made in whole or in part by MaineCare:

| COUNT | ON OR ABOUT DATE |
| --- | --- |
| 21 | December 31, 2015 |
| 22 | January 29, 2016 |
| 23 | February 5, 2016 |
| 24 | February 12, 2016 |
| 25 | May 6, 2016 |

All in violation of Title 42, United States Code, Section 1320a-7b (b)(2).

### COUNT TWENTY-SIX
### False statement relating to a health care benefit program
### 19 U.S.C. § 1035

50.    Paragraph 1 of this Superseding Indictment is incorporated by reference as if fully set

forth herein.

51.    On about December 14, 2016, in the District of Maine, the defendant,

### NANCY LUDWIG

did make and use materially false writings and documents knowing the same contained

materially false, fictitious, and fraudulent statements, in connection with the delivery of or

payment for health care benefits, items, and services involving MaineCare.

In violation of Title 18, United States Code, Section 1035.

**COUNT TWENTY - SEVEN**
**Obstruction of a Federal Audit**
**18 U.S.C. § 1516**

52.    Paragraph 1 of this Superseding Indictment is incorporated by reference as if fully set

forth herein

53.    On about December 14, 2016, in the District of Maine, the defendant,

**NANCY LUDWIG**

with the intent to deceive and defraud the United States, endeavored to influence, obstruct, and

impede a Federal auditor, to-wit, a MaineCare fraud auditor/investigator, in the performance of

official duties.

In violation of Title 18, United States Code, Section 1516.

Signature redacted. Original on file.

A TRUE BILL,

_____
Assistant United States Attorney

Dated:    _11-16-18_

_____
GRAND JURY FOREPERSON

-17-